**Patra BONHAM and Ann Riordan, Individually, and as representatives of a class of all persons similarly situated**

v.

**The COPPER CELLAR CORPORATION, a corporation, and Michael Chase, an agent and officer of The Copper Cellar Corporation.**

Civ. No. 3–79–175.

United States District Court,
E. D. Tennessee, N. D.

July 23, 1979.

Patrick H. Hardin, Knoxville, Tenn., for plaintiffs.

Dudley W. Taylor, Philip P. Durand, Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Plaintiffs Patra Bonham and Ann Riordan originally brought this action against The Copper Cellar Corporation and Michael Chase, its president, for alleged violations of the Fair Labor Standards Act, ("the Act"), 29 U.S.C. §§ 201 *et seq.* Pursuant to 29 U.S.C. § 216(b), Donna Harris later consented to join this action as an additional party plaintiff. A trial on the merits has been held and extensive evidence and argument have been presented to the Court. This memorandum shall stand as the findings of fact and conclusions of law of the Court. Fed.R.Civ.P. 52(a).

Plaintiffs originally sought recovery both for unpaid wages and for retaliatory discrimination. By order dated June 8, 1979, the Court severed plaintiff's claims. The issues were tried separately, though at the same sitting of the Court. The issues will be discussed in sequence in this opinion.

### Minimum Wage

This case concerns work performed by plaintiffs as waitresses for the defendants at the Copper Cellar restaurant in 1977 and 1978.[1] The applicable minimum wage for those years was $2.30 and $2.65 per hour respectively. It is undisputed that defendants paid plaintiffs for work as waitresses at $1.10 per hour in 1977 and $1.00 per hour in 1978.[2]

Having admitted enterprise coverage, defendants concede they were obligated to pay the minimum wage for all periods in dispute. 29 U.S.C. § 206(a)(1). Defendants seek to justify paying less than the minimum wage in two ways. First, defendants claim credit for $.05 and $.325 per hour, in 1977 and 1978 respectively, due to certain costs paid by defendants for plaintiffs' benefit. With such credit, defendants claim they paid 50 percent of the minimum wage. Second, defendants claim credit for plaintiffs' tips for the remaining 50 percent of the minimum wage during the period in question.

In terms of defendants' first claim, 29 U.S.C. § 203(m) provides that in calculating wages paid, the reasonable cost of "board, lodging, or other facilities" furnished to the employee shall ordinarily be included along with cash wages paid. Defendants argue that the Court should allow a credit for meals furnished to the plaintiffs at half price, and service charges returned to plaintiffs, see 29 C.F.R. §§ 531.32(a) and 531.55, as well as credit card tip losses voluntarily assumed by defendants. There appears to be no dispute, and the Court concludes, that such charges are ordinarily attributable to the 50 percent of the minimum wage that employers must pay to tipped employees.[3] Defendants' accounting procedures do not permit the Court to find with confidence the precise credit to which defendants are entitled. The Court finds, however, that defendants are entitled to the amounts sought, that is, $.05 per hour in 1977 and $.325 per hour in 1978.

Defendants seek to rely upon the tip credit provisions of 29 U.S.C. § 203(m) for the remaining 50 percent of the minimum wage. That section provides for the relevant dates,[4] in part as follows:

> In determining the wage of a tipped employee, the amount paid such employee by his employer shall be deemed to be in-

---

1. The parties stipulated that the relevant hours were as follows:

| | 1977 | 1978 |
|---|---|---|
| Patra Bonham | 295.75 | 662.75 |
| Donna Harris | –0– | 1,016.25 |
| Ann Riordan | 344.5 | 312.25 |

2. Plaintiffs performed other work for defendants, which is not at issue here.

3. 29 U.S.C. § 203(m). Effective January 1, 1979, the percentage paid by employers to tipped employees has changed. P.L. 95–151, § 3(b)(1).

4. See *supra*, n.3.

creased on account of tips by an amount determined by the employer, but not by an amount in excess of 50 per centum of the applicable minimum wage rate, except that the amount of the increase on account of tips determined by the employer may not exceed the value of tips actually received by the employee. The previous sentence shall not apply with respect to any tipped employee unless (1) such employee has been informed by the employer of the provisions of this subsection, and (2) all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

Under this section, an employer may lawfully pay a tipped employee as little as one-half of the minimum wage as long as certain conditions are met.

■ Plaintiffs are, as the parties concede, "tipped employees" for purposes of the act.[5] Furthermore, it is not contested that plaintiffs in fact received more in tips than the $1.15 and $1.325 per hour sought by defendants as a credit for 1977 and 1978. The Court finds, however, that defendants are not entitled to any credit for plaintiffs' tips because plaintiffs were not informed by defendants of the tip credit provisions and plaintiffs were required to pool their tips with employees who did not customarily and regularly receive tips.

In terms of information about the Act, the record shows that none of the provisions of that Act were explained to plaintiffs either when they were hired or during their training period. Witnesses for defendants made vague references to conversations about the minimum wage, but no witness could testify to any specific conversation with any of the plaintiffs. Nor does the record suggest that there existed any program whereby relevant provisions of the Act were explained to all employees.[6] The Court is certain that this failure was not designed to mislead any employees. When questions were raised to management personnel, good faith attempts were made to answer them. But defendants' good faith cannot waive the requirements of the Act.

The second relevant precondition to reliance upon the tip credit is that the tipped employees must be permitted to retain all tips except for pooling with other tipped employees. There was a tip-sharing system in effect at defendants' restaurant during the period in question. Defendants vigorously contend that all tip sharing was purely voluntary, and there is evidence to support this position. The Court is satisfied, however, that plaintiffs reasonably concluded that tip sharing was mandatory and acted accordingly.

The record shows that prior to plaintiffs' employment, the waitresses at the Copper Cellar requested that the prevailing tip sharing arrangement be changed so that 15 percent of all waitresses' tips would be shared equally among bartenders, busboys and kitchen personnel, 5 percent to each group. Defendants admit that kitchen personnel are not employees "who customarily and regularly receive tips." When they were hired, plaintiffs were told to follow this guideline by agents of the defendants. Waitresses, testifying for defendants, did state that all waitresses did not obey these guidelines and that no one was ever disciplined as a result. While this is no doubt true, defendant Chase admitted that he urged that the guidelines be followed and that he spoke personally to any waitress whom he discovered was not sharing 15 percent of her tips. Furthermore, on at least one occasion, defendant Chase directed in writing that the 5 percent share be given to busboys under threat that if this were not done, a flat fee would be deducted from

---

5. Plaintiffs regularly received far more than the required $30 per month in tips. 29 U.S.C. § 203(t).

6. A poster containing some or all of the relevant information apparently was hanging somewhere in the defendants' restaurant. The evidence shows that the poster was not prominently displayed, employees were not directed to it and its contents were not introduced at trial. Under these circumstances, the poster does not satisfy the notice requirement.

all waitresses. While mandatory pooling with busboys is not prohibited by Section 203(m), *see* 29 C.F.R. § 531.54, plaintiffs were justified in assuming that if one part of the tip pool were mandatory, all parts were mandatory.

█ Because defendants do not qualify for the tip credit, tips received by plaintiffs may not be considered as part of wages paid to them for purposes of satisfying defendants' minimum wage obligations. This is true despite plaintiffs' admissions that their actual income, including tips, greatly exceeded the minimum wage for the relevant period. Without reference to tips, plaintiffs' wages were below the minimum by $1.15 per hour in 1977, and $1.325 in 1978. Plaintiffs' compensatory damages are thus as follows: Patra Bonham—$1,224.88, Ann Riordan—$809.91, and Donna Harris—$1,346.53.

Pursuant to 29 U.S.C. § 216(b) plaintiffs seek, in addition to compensatory damages, an "equal amount" as liquidated damages. Prior to the enactment of Section 11, the Portal-to-Portal Act of 1947, 29 U.S.C. § 260, such liquidated damages were mandatory. Under Section 11, however, the Court may reduce or eliminate liquidated damages if it finds that "the act or omission . . . was in good faith and that [the employer] had reasonable grounds for believing that his act or omission was not a violation of the [Act] . . . ."

█ Defendants' violations of the Act were not purposeful or oppressive invasions of plaintiffs' rights. Defendant Chase believed in good faith that the tip-sharing system was voluntary, though this was never effectively communicated to his employees. Chase also felt that the relevant provisions of the Act had been substantially communicated to his employees. Under ordinary circumstances, this Court would not even consider granting a penalty for technical violations such as these against a party acting in good faith. The Court must recognize, however, that under the Act Congress has made liquidated damages the rule and not the exception. See *McClanahan v. Matthews*, 440 F.2d 320, 322–23 (6th Cir. 1971). While defendants have demonstrated good faith, the Court feels that their non-compliance cannot be totally excused. An award to each plaintiff of one-half of her compensatory damages as liquidated damages will serve fully to compensate each plaintiff and the Court so awards.[7]

█ In addition to damages, plaintiffs seek attorney's fees. 29 U.S.C. § 216(b) provides in part that in actions under the Act, "[t]he Court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." Counsel for plaintiffs has submitted an affidavit containing estimated hours worked on all claims in this case. In open court, counsel estimated his fee for the back pay claims at issue here as approximately $2,000. The Court accepts counsel's representations and notes that the case was very well tried. Nevertheless, the Court feels that $2,000 would be excessive. An attorney could easily spend a larger amount of time preparing for a case such as this than is objectively justified. This Court must also consider the nature and complexity of the issues involved. See *Rau v. Darling's Drug Store, Inc.*, 388 F.Supp. 877, 887 (W.D.Pa.1975). After considering the case for back wages as a whole, including the efforts of counsel, the Court finds that $1,200 is a reasonable attorney's fee.

### Retaliation

Plaintiffs Bonham and Riordan allege that they were discharged because defendants believed that they had filed, or caused to be instituted, proceedings under the Act. Plaintiffs also allege that they were subjected to further harassment subsequent to their termination.

█ The parties do not disagree about the proper legal standard to be applied to these claims. Section 15(a) of the Act, 29 U.S.C. § 215(a), provides in relevant part:

---

7. This award serves in part to discharge defendants' obligation for pre-judgment interest.

See *McClanahan v. Matthews*, 440 F.2d 320, 326 (6th Cir. 1971).

"It shall be unlawful for any person

\* \* \* \* \* \*

"(3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Chapter . . . ."

Where the immediate motivating factor for an employee's discharge is the employee's assertion of statutory rights under the Act, either officially or in complaints at work, the discharge is discriminatory whether other grounds for discharge exist or not. See *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179, 180–83 (8th Cir. 1975). Furthermore, a former employee is clearly protected against any type of harassment after employment has been ended. See *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139 (6th Cir. 1977). Nevertheless, the general rule remains that violations of Section 15(a)(3) must be proved by a preponderance of the evidence. See *Brennan v. Braswell Motor Freight Lines, Inc.*, 396 F.Supp. 704, 709 (N.D.Tex.1975). The Court finds that plaintiffs did not sustain their burden of proof on the issue of retaliation.

█ The record shows that plaintiff Bonham was fired for reasons that were not related to her complaints to the Labor Department. Plaintiff was, by her own testimony, dissatisfied generally with conditions at the Copper Cellar restaurant. These conditions included not only the wages paid but also matters unrelated to the Act. Plaintiff complained about these conditions both to supervisors and to her fellow employees. These complaints were communicated strongly at least once to customers in the restaurant. The Court is confident that it was this type of behavior rather than complaints pursuant to the Act that led to plaintiff's discharge.

The case of plaintiff Riordan also does not prove retaliatory discharge. There is a strong dispute in the record over whether plaintiff was terminated or voluntarily quit. Assuming arguendo that plaintiff was discharged, there is still no violation of the Act. The incident out of which plaintiff's discharge arose involved a meeting of waitresses called by defendant Chase. Defendant Chase was apparently angered by plaintiff's inattention at the meeting. The two exchanged some heated language. Assuming that defendant fired plaintiff on the spot, as plaintiff contends, the action was a result of the heat of the moment and could not reasonably be attributed to a calculated consideration of plaintiff's earlier complaints. The Court is confirmed in its view that these discharges were unrelated to plaintiff's complaints under the Act because, by all accounts, other waitresses cooperated with the Labor Department investigation and yet were not subjected to any retaliation by defendants.

█ More troublesome to the Court is plaintiff Bonham's allegation that defendant Chase attempted to interfere with her employment at the Smuggler's Inn restaurant subsequent to her discharge from the Copper Cellar, and subsequent to the filing of this lawsuit. Defendant Chase did speak with the landlord of Smuggler's Inn and informed him that plaintiff had instituted a suit against him. It does not appear that defendant suggested that the landlord pass this information on to plaintiff's new employer, but in any event the landlord did contact the manager of Smuggler's Inn and it was reasonably foreseeable that he would do so. No action was ever taken against plaintiff by Smuggler's Inn because of this phone call.

Under the law, employers cannot be permitted to punish former employees by seeking to have them "black-listed" by potential employers. See *Dunlop v. Carriage Carpet Co., supra*, 548 F.2d at 147. Defendant's actions were certainly ill-advised. But plaintiff has not sustained her burden of proof. Defendant Chase did not inform the landlord of the nature of the suit plaintiff had instituted, a key factor if discriminatory intent is to be found. Defendant did not ask the landlord to pass the information on. Finally, there is evidence that plaintiff Bonham had freely discussed her lawsuit with the management at Smuggler's Inn and that defendant was aware of this. The

conversation with the landlord took place in a social context in which defendant admits to having had a few too many drinks. Under these circumstances it appears to the Court that defendant was "blowing off steam" rather than making a serious attempt at interfering with plaintiff's employment relationship.

For the foregoing reasons, it is ORDERED that judgment be entered for plaintiffs on the claim of back wages and for defendants on the claim of retaliation. It is further ORDERED that Patra Bonham, Ann Riordan, and Donna Harris recover $1,224.88, $809.91 and $1,346.53 compensatory damages and $612.44, $404.96 and $673.27 liquidated damages respectively, together with costs of this action and an attorney's fee of $1,200.00.

Order accordingly.