Misti A. **KILGORE**, Crystal I. Madison, Michael A. Badal, and Robert P. Andrews, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

**OUTBACK STEAKHOUSE OF FLORIDA, INC.,** a/k/a FMI Restaurants, Inc., Defendant–Appellee.

No. 97–5902.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 21, 1998.

Decided Nov. 2, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 9, 1998.

Dale J. Montpelier (briefed), Katherine A. Young (argued and briefed), Montpelier &

Young, Knoxville, TN, for Plaintiffs–Appellants.

William G. Trumpeter (argued and briefed), John Y. Elliott, III (briefed), Miller & Martin, Chattanooga, TN, for Defendants–Appellees.

Before: KENNEDY and COLE, Circuit Judges; RUSSELL, District Judge.*

## OPINION

KENNEDY, Circuit Judge.

Defendant Outback Steakhouse of Florida, Inc. ("Outback") requires its servers to give a share of their tips (a "tip out") to Outback, which then distributes this entire "tip pool" between hosts/hostesses ("hosts"), bus persons, and bartenders. Plaintiffs are hosts and servers at Outback who challenge Outback's tip pool arrangement under the Fair Labor Standards Act ("FLSA") minimum wage provisions.[1] After the parties consented to referral to a magistrate judge for final disposition pursuant to 28 U.S.C. § 636(c), the magistrate judge granted summary judgment to the defendant on all of plaintiffs' claims. We affirm in part and reverse and remand in part.

### I. Facts

As this appeal reviews the grant of a summary judgment motion for the defendant, we view the facts in the light most favorable to the plaintiffs. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Defendant Outback operates a chain of steakhouses. All Outback restaurants hire employees into the two positions at issue here: servers and hosts. Servers at Outback perform the traditional tasks of waiters and waitresses. They take orders, deliver food and drinks, and take care of other customer demands. Hosts primarily greet customers, pass out menus, and seat the customers. Hosts also take carry-out orders by phone and transfer carry-out information to the bar where the customer picks up her order, clear dirty dishes from tables although this is primarily the responsibility of the bus staff, fill customers' water glasses, "enhance the wait" by providing complementary appetizers or drinks to customers who are waiting for a table (Outback does not take reservations, so the wait can be substantial), and take appetizer orders to customers. The parties dispute how often hosts perform this latter list of tasks, but the plaintiffs accept that the hosts do perform them rarely. Plaintiffs in the instant case were servers and hosts at Outback at various times from 1995 to 1997.

Outback forbids hosts from taking tips from customers. Servers are allowed to receive tips. Plaintiffs assert that tips in the Outback restaurants where they work frequently fail to reach the "standard" fifteen percent level. Three of the plaintiffs have stated that "[i]t was not uncommon for customers to tip less than ten percent."

Outback compels its servers to contribute three percent of their "total gross sales" during each shift to a tip pool (hereinafter, referred to as the "tip-out" requirement). Management then distributes that entire pool of money between the hosts, bus people, and bartenders who worked that shift. According to the plaintiffs, a given server's total gross sales include the food and alcohol sold at the tables waited on by that server, sales of food which was returned to the kitchen for which the customer was not charged, "takeout" food ordered by customers seated in that server's assigned area, any sales tax, sales of Outback branded products like t-shirts and steak knives, food sold to an employee at its full-price even though the employee paid a discounted price, and gift certificates sold to customers at tables seated at the tables assigned to that server.

In practice, the three percent of total sales tip-out requirement routinely required servers to tip out more than fifteen percent of the tips they received in a given shift. The plaintiffs have produced evidence that over a two week period, the three percent gross

---

* The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

1. Plaintiffs moved to certify a class of Outback employees who are similarly situated. The magistrate judge dismissed the plaintiffs' claims before ruling on the class certification motion.

sales tip-out requirement resulted in Outback servers tipping out 37.5% of the tips they received. One server states in an affidavit that "I have personally known of people who made so little in tips that other employees took up a collection of money to help them be able to pay their 'tip-out.'"

Outback paid hosts and servers $2.125 per hour not including tips and tip outs. In an affidavit, an employee of the defendant asserts that when respective shares of the tip out are included, the plaintiff hosts and servers never received less than minimum wage for a work week during their employment at Outback. The plaintiffs do not rebut this assertion.

The parties dispute whether Outback provided sufficient notice regarding its intent to take a tip credit to the plaintiffs. We discuss the factual details relating to the notice issue in section II.A. of this opinion.

## II. Discussion

On appeal, plaintiffs make three primary arguments. First, they argue that Outback did not "inform" the plaintiffs of its intent to take a tip credit toward its minimum wage obligations. Thus, Outback's tip credit was invalid and Outback owes them the difference between the minimum wage and what Outback directly paid to the plaintiffs. Second, the plaintiffs argue that hosts are not "tipped employees" as defined in 29 U.S.C. § 203(t) because a host at Outback is not an employee who is "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." Thus, Outback cannot use the 29 U.S.C. § 203(m) tip credit provision to include tips in their minimum wage calculations. Similarly, plaintiffs argue that hosts at Outback are not "employees who customarily and regularly receive tips." Thus, the tip pool is invalid because 29 U.S.C. § 203(m) authorizes tip pools only among "employees who customarily and regularly receive tips." Third, plaintiffs argue that the amount of tip out required of servers by Outback is excessive and in violation of administrative interpretations

of 29 U.S.C. §§ 203(m) and 206(a). After first noting the standard of review and then summarizing the applicable FLSA sections, we discuss these three arguments in turn below and then briefly discuss plaintiffs' other arguments.

██ We review a district court's grant of summary judgment de novo. *See Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 683, 136 L.Ed.2d 608 (1997). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). We must view the facts and all inferences drawn from the facts in the light most favorable to the nonmoving party. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When confronted with a properly-supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The FLSA, 29 U.S.C. §§ 201–219, establishes a minimum wage. Between 1991 and October 1, 1996, the minimum wage was $4.25 per hour:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:
>
>> (1) except as otherwise provided in this section ... not less that $4.25 an hour after March 31, 1991 ....

29 U.S.C. § 206(a) (1994) ("subsection 206(a)").[2]

---

**2.** The minimum wage rose from $4.25 to $4.75 per hour effective October 1, 1996 and to $5.15 an hour beginning on September 1, 1997. 29

U.S.C.A. § 206(a)(1) (West Supp.1998). These changes do not affect our analysis.

Another provision of the FLSA, 29 U.S.C. § 203(m), allows employers to pay less than minimum wage to employees who receive tips. The mechanism it creates to allow employers to pay less than minimum wage is the "tip credit." The tip credit allows employers to include in its calculation of a "tipped employee's" wage the amount that an employee receives in tips up to fifty percent of the minimum wage:

> In determining the wage of a *tipped employee,* the amount paid such employee by his employer shall be deemed to be increased on account of tips by an amount determined by the employer, but not by an amount in excess of ... 50 percent of the applicable minimum wage rate after March 31, 1991, except that the amount of the increase on account of tips determined by the employer may not exceed the value of tips actually received by the employee.

29 U.S.C. § 203(m) (1994) (emphasis added) ("subsection 203(m)").[3] The first words of this quoted language limits how employers can use the tip credit. Employers can take a tip credit only toward the wages of employees who qualify as "tipped employee[s]." Subsection 203(t) defines "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t) (1994) ("subsection 203(t)").

Subsection 203(m) also requires an employer to satisfy two other conditions to use a tip credit toward an employee's minimum wage:

> The previous sentence [establishing the tip credit] shall not apply with respect to any tipped employee unless (1) such employee has been informed by the employer of the provisions of this subsection, and (2) all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to pro-

hibit the pooling of tips among employees who customarily and regularly receive tips. 29 U.S.C. § 203(m) (1994).

## A. Notice Requirement

Subsection 203(m) allows for employers to take a tip credit toward the minimum wage owed an employee only if the employee "has been informed by the employer of the provisions of this subsection." 29 U.S.C. § 203(m) (1994). To determine whether Outback satisfied this notice requirement, we must answer two questions: what information must the employer pass along to the employee and how may the employer convey that information.

With respect to the first question, we hold that an employer must inform the employee that it intends to treat tips as satisfying part of the employer's minimum wage obligation. *See Martin v. Tango's Restaurant, Inc.,* 969 F.2d 1319, 1322 (1st Cir.1992) (reading "section 3(m) [29 U.S.C. § 203(m)] to require at the very least notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations"). In other words, an employer must inform its employees of its intent to take a tip credit toward the employer's minimum wage obligation.

As to how the employer may deliver that information to the employee, we conclude that an employer must provide notice to the employees, but need not necessarily "explain" the tip credit as argued by the plaintiffs. The statute requires that the employee be "informed" of the tip credit. As the magistrate judge concluded, "inform" requires less from an employer than the word "explain" would.

Plaintiffs' reliance on *Bonham v. Copper Cellar Corp.,* 476 F.Supp. 98 (E.D.Tenn. 1979), to support their argument that an employer must "explain" the tip credit is misplaced. The *Bonham* court held that an

---

**3.** In 1996, Congress amended the FLSA to allow employers to take greater tip credits as the minimum wage increased. *See* 29 U.S.C.A. § 203(m) (West Supp.1998). The provisions regulating how the tip credit functions and the requirements employers must follow to use a tip credit were not substantively changed. Thus, this change would only affect the determination of damages in this case. To avoid confusion, we cite solely to the FLSA language before the 1996 amendments.

employer did not provide the required notice where:

In terms of information about the Act, the record shows that none of the provisions of that Act were explained to plaintiffs either when they were hired or during their training period. Witnesses for defendants made vague references to conversations about the minimum wage, but no witness could testify to any specific conversation with any of the plaintiffs. Nor does the record suggest that there existed any program whereby relevant provisions of the Act were explained to all employees.... A poster containing some or all of the relevant information apparently was hanging somewhere in the defendants' restaurant. The evidence shows that the poster was not prominently displayed, employees were not directed to it and its contents were not introduced at trial. Under these circumstances, the poster does not satisfy the notice requirement.

*Id.* at 101 & n. 6 (E.D.Tenn.1979). The *Bonham* court did not require explanation in the sense that the plaintiffs are using it; the *Bonham* court only held that vague conversations about the minimum wage plus a single poster with "some or all of the relevant information" does not establish the notice required by subsection 203(m).

As discussed below, the content of the written notice provided by Outback here satisfies the express requirements of subsection 203(m). No material issue of fact exists as to whether plaintiff Kilgore received this notice. The magistrate judge correctly granted summary judgment on her notice claim. As to plaintiffs Madison, Badal, and Andrews, a material issue of fact exists as to whether they received the written notice from Outback; summary judgment on their notice claims was inappropriate.

In support of its motion for summary judgment, Outback submitted an affidavit from the managing partner of the Outback restaurant where plaintiffs Kilgore and Madison worked. In the affidavit, the managing partner defines "the Restaurant" as the specific Outback restaurant at which he is the managing partner. The affidavit asserts that "all Plaintiffs" received a "file folder" when they applied for work and were asked to read it. At the time of the affidavit, Kilgore and Madison were plaintiffs in this suit; plaintiffs Badal and Andrews were not.[4] The managing partner's affidavit also asserts that "[a]ll applicants for the Host or Server position at *the Restaurant* are provided with a 'file folder.'" Plaintiffs Kilgore and Madison worked at that restaurant; plaintiffs Badal and Andrews did not. The managing partner's affidavit also asserts that all host and servers at "the Restaurant" receive training before they start work at which the tip pool and credit are explained and "[a]ll of the Plaintiffs," only Kilgore and Madison at the time, attended this training course before they started work.

The "file folder" described in the managing partner's affidavit contained a statement describing the "Outback Tip Policy." The "Outback Tip Policy" stated that "I understand that the practice of sharing tips among tipped employees is approved by Outback Steakhouse. Further, I understand that tips will be used as a credit against the minimum wage as permitted by federal and/or state law." The "Outback Tip Policy" also fully quoted subsection 3(m) of the FLSA, 29 U.S.C. § 203(m).

In an affidavit, plaintiff Kilgore, a host throughout her employment and also a server for two months, states that "I was never expressly trained in Outback's procedures relating to the tip credit" and that "I do not recall the reason for the tip out being explained to me. Further, I was not told to read any section of new employee materials dealing with the tip credit or the tip pool, nor was I given time to read the new employee materials." Kilgore does not deny receiving from Outback the "Outback Tip Policy" page in her new employee materials. The affidavit by the managing partner at the store at which Kilgore worked asserts that Kilgore received materials including the "Outback Tip Policy" page. Thus, no issue of fact exists as to whether Kilgore received the "Outback Tip Policy" page. The "Outback Tip Policy" clearly stated that Outback would

---

**4.** At the time there was an additional plaintiff in the suit who subsequently withdrew.

use the tip credit against the minimum wage. We hold that providing this information to Kilgore satisfied the subsection 203(m) requirement to inform her of Outback's intent to treat tips as satisfying part of the her minimum wage.

■ Plaintiff Madison's affidavit construed most favorably to her permits the inference that she did not receive Outback's written information on its tip policy. Specifically, she states in her affidavit:

> When I was interviewing for the position, [the general manager] did not personally give me any new employee materials of any kind.... When I was hired, I was not given a[ ] new employee handbook. I was told it was because the restaurant did not have any left in stock the day that I started. I did not sign anything regarding tip credits or tip pools, and I was never asked to sign a "tip-out" agreement that specified how the tip-out was to be distributed. Further, I was not informed as to who received monies from the tip-out or in what proportion the monies were distributed.

While Madison does not claim that she never received a new employee handbook, her affidavit can be read as controverting defendant's affidavit that she received notice when she was hired. We hold that summary judgment on Madison's notice claim was inappropriate.

Plaintiff Andrews, a server, states that "I recall being handed new employee materials that may or may not have included information on the tip credit or the reason for the tip out but I do not remember any explanation other than the three percent (3%) is mandatory. The tip credit was never explained to me." Plaintiff Badal, also a server, states that "I recall being handed new employee materials that may or may not have included this information [on the tip credit], but I do not recall the reason for the tip out being explained to me, I was not told to read that section in the new employee materials, and I was not given time to read the new employee

materials." Outback has provided no affidavits or other evidence indicating that Andrews or Badal received the "Outback Tip Policy" page and Andrews's and Badal's statements alone do not establish that they received any notice about the tip credit. An affidavit by the managing partner of the Outback restaurant where Andrews and Badal worked makes no mention of any notice Outback provided to Andrews or Badal about the tip credit. Therefore, we hold that summary judgment on Andrews's and Badal's claim that they did not receive the requisite notice was inappropriate.

In sum, the magistrate judge correctly granted summary judgment on plaintiff Kilgore's claim that she did not receive notice of the tip credit. The magistrate judge erred in granting summary judgment on plaintiffs Madison's, Badal's, and Andrews's notice claims because an issue of fact exists as to whether they received notice of the tip credit from Outback.

## B. Whether Outback Hosts are Tipped Employees

Subsection 203(m) only allows employers to take tip credits toward the wage paid to "tipped employees." Subsection 203(t) defines "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t) (1994). Using similar language, subsection 203(m) only permits tip pooling among "employees who customarily and regularly receive tips." 29 U.S.C. § 203(m) (1994).[5] Plaintiffs argue that hosts are not tipped employees because an Outback host is neither "engaged in an occupation in which he customarily and regularly receives ... tips" (§ 203(t)) nor an "employee[ ] who customarily and regularly receive[s] tips" (§ 203(m)). Plaintiffs do not dispute that if the tips the hosts receives from the tip pool are included, hosts receive greater than $30 a month in tips as required by subsection 203(t).

---

**5.** This part of subsection 203(m) in full provides that "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m) (1994).

■ As an initial matter, we note that the subsection 203(m) requirements make up part of the broader subsection 203(t) requirements. Subsection 203(m) requires that in order for a tip pool to be valid, participating employees must be "employees who customarily and regularly receive tips." Subsection 203(t) requires that for an employee to be a tipped employee, the employee must both "customarily and regularly receives tips," which is identical to the subsection 203(m) requirement, and be "*engaged in an occupation* in which he customarily and regularly receives tips." Thus, if a tip-pool participating employee fulfills the subsection 203(t) requirements, she necessarily fulfills the subsection 203(m) requirements as well. Because we find that the subsection 203(t) requirements are satisfied here, it follows that the subsection 203(m) requirements are satisfied as well.

■ Plaintiffs' argument that hosts are not tipped employees fails because: (1) Department of Labor regulations indicate that tips received from a tip pool should be considered as tips for the purpose of subsections 203(m) and (t) and (2) hosts at Outback are part of an occupation that customarily and regularly receives tips and are employees who customarily and regularly receives tips.

Employees who receive tips from a tip pool are employees who "receive tips" according to Department of Labor regulations, case law, and Department of Labor practices. "Where employees practice tip splitting, as where waiters give a portion of their tips to busboys, the amounts retained by the waiters and those given the busboys are considered tips of the individuals who retain them, in applying the provisions of section 3(m) and 3(t)." 29 C.F.R. § 531.54 (1996); *see also Marshall v. Krystal Co.,* 467 F.Supp. 9, 13 (E.D.Tenn.1978) (stating that waiters, bus persons, and bartenders who "receive customarily and regularly as tips from customers *or by apportionment of such pools* amounts exceeding [the amount required by subsection 203(t) ] monthly, each" are eligible

to participate in a tip pool (emphasis added)); U.S. DEPT. OF LABOR FIELD OPERATIONS HANDBOOK § 30d04(a) ("It is not required that all employees who share in tips must themselves receive tips from customers."). This approach is consistent with the statutory language, which does not require that an employee directly receive the requisite amount of tips from customers.[6]

Plaintiffs correctly identify some circularity here: whichever employees Outback decides to allocate the tip pool to could receive the requisite $30 a month in tips. Plaintiffs argue that this definition would allow Outback and other employees to designate any of its employees as tipped employees, and then use a tip credit against the employer's minimum wage obligations if there are enough tips to go around. Plaintiffs argument fails because the circularity is limited by the subsection 203(t) requirement that an employee work "in an occupation in which he customarily and regularly receives ... tips."

Hosts at Outback are "engaged in an occupation in which [they] customarily and regularly receive[ ] ... tips" because they sufficiently interact with customers in an industry (restaurant) where undesignated tips are common. Although the parties dispute exactly how hosts spend their time working at Outback, hosts do perform important customer service functions: they greet customers, supply them with menus, seat them at tables, and occasionally "enhance the wait." Like bus persons, who are explicitly mentioned in 29 C.F.R. § 531.54 as an example of restaurant employees who may receive tips from tip outs by servers, hosts are not the primary customer contact but they do have more than de minimis interaction with the customers. One can distinguish hosts from restaurant employees like dishwashers, cooks, or off-hour employees like an overnight janitor who do not directly relate with customers at all. Additionally, the fact that Outback prohibits hosts from receiving tips directly from customers provides some evidence that Outback

6. Plaintiff also argues that Outback's policy of prohibiting hosts from accepting tips directly from customers precludes a finding that they are tipped employees. Because tips received from a tip pool are included in the analysis of whether an employee receives enough tips to qualify as a "tipped employee," Outback's rule against direct tipping of hosts does not affect our analysis under subsections 203(m) and (t).

hosts work in an occupation that customarily and regularly receives tips.

Other courts have reached conclusions similar to ours here. Although no other courts have analyzed whether a *host* is a "tipped employee," one court has held that a tip pool that benefits a maitre d' is permissible under the FLSA. In *Dole v. Continental Cuisine, Inc.,* 751 F.Supp. 799 (E.D.Ark.1990), the district court upheld a mandatory tip pool where servers tipped out solely to a maitre d' who "receives no tips directly from customers" and whose responsibilities included setting up the dining room, greeting and seating customers, serving the first drink to customers, and assisting servers in serving customers as needed. *See id.* at 800–01; *cf. Elkins v. Showcase, Inc.,* 237 Kan. 720, 704 P.2d 977, 989 (Kan.1985) (holding that non-service bartenders are not tipped employees because they "were located behind a wall so they did not have any contact with customers and were not in a position to receive tips").

For the reasons stated in this section of the opinion, we reject plaintiffs' argument that Outback's tip credit and tip pool is invalid because Outback hosts are not employees "in an occupation in which [they] customarily and regularly receive[ ] tips."

### C. Customary and Reasonable Tip Out

■ Plaintiffs argue that Outback's tip-out requirement of three percent of total gross sales is excessive and thus not "customary and reasonable." Plaintiffs rely on two opinion letters of the Administrator of the Wage and Hour Division of the Department of Labor ("the Administrator") to support their claim that the size of the tip-out requirement must be "customary and reasonable." We reject the plaintiffs' argument because neither the statute nor its regulations mention this requirement and the opinion letters do not cite to any part of the statute for this requirement. Additionally, the opinion letters are not entitled to deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

The FLSA itself does not state that tip outs are limited to a "customary" or "reasonable" amount of an employees tips. The plaintiffs cite to no statutory language to support their argument.

■ Instead, the plaintiffs argue that two opinion letters of the Administrator establish this limitation and these opinions are binding on this court as administrative interpretation of the FLSA entitled to *Chevron* deference. The plaintiffs are correct that the two opinion letters attempt to limit the amount of tips an employer can require an employee to tip out. In Opinion Letter WH–380 issued on March 26, 1976, the Administrator stated "[a] valid tip pooling arrangement ... cannot require waiters and waitresses to contribute a greater percentage of their tips than is customary and reasonable." Wage–Hour Administrator Opinion WH–380, Tip Pooling (March 26, 1976). Opinion Letter WH–468 further defines this prohibition:

> For enforcement purposes, the Wage and Hour Division does not question contributions to a pool not exceeding 15% on an employee's tips, unless there is evidence that the percentage is designed to circumvent the FLSA's tip credit provisions. Where a percentage of total sales is used for funding a tip pool, the Division would not question contributions by any employee that do not exceed 15% of the tips actually received by that employee. A percentage of sales approach might not meet the Division's 15% standard in establishments where tips are low. FLSA, Section 3(m).

Wage–Hour Administrator Opinion WH–468 (March September 5, 1978).

The magistrate judge correctly refused to follow these two opinion letters. Plaintiffs' argument that these two opinion letters should receive *Chevron* deference is unavailing. This court has noted that "courts do not accord *Chevron* deference to non-binding advisory opinions of an administrative agency." *Mid–America Care Found. v. NLRB,* 148 F.3d 638, 642 (6th Cir.1998); *see also Reich v. Parker Fire Protection Dist.,* 992 F.2d 1023, 1026 (10th Cir.1993) (refusing to give *Chevron* deference to Wage and Hour Administrator Opinion Letters).

■ We also do not find any persuasive value in these opinion letters. As the Su-

preme Court noted in *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), the opinions of the Administrator of the Wage and Hour Division of the Department of Labor have persuasive value if the position is thoroughly considered and well-reasoned:

> We consider that the rulings, interpretations and opinions of the Administrator under [the FLSA], while not controlling under the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Id.* at 140. The opinion letters here fail to persuade us because they do not explain the statutory source for the limitation that they create. *See Brock v. Louvers & Dampers, Inc.*, 817 F.2d 1255, 1258 (6th Cir.1987) (cautioning that unexplained agency constructions of their enabling statute have little persuasive value); *Continental Cuisine*, 751 F.Supp. at 803 (holding that a tip-out requirement that resulted in servers tipping out forty percent of their tips did not violate the FLSA and refusing to follow the opinion letters because "[t]he Court can find no statutory or regulatory authority for the Secretary's opinion that contributions in excess of 15% of tips or 2% of daily gross sales are excessive"). The opinion letters provide no reasoning or statutory analysis to support their conclusion that there is a "reasonableness" limit on how much an employer can require an employee to tip out. Opinion letter WH–380 cites no statutory provision or regulation to support its limitation. Opinion letter WH–468 at least cites to subsection 3(m) of the FLSA, 29 U.S.C. § 203(m). However, nothing in the language of this subsection appears to support this limitation. Subsection 203(m) neither limits the amount of a tip out to what is "customary or reasonable" nor states that a tip out should not exceed 15% of an employee's tips.[7]

In the instant case, the plaintiffs do not argue that they ever received less than minimum wage for a week of work at Outback. *See* 29 U.S.C. § 206(a) (1994) (establishing a week as the unit of time that should be used in calculating whether an employee receives the minimum wage). Because we reject the plaintiffs' argument that the FLSA limits tip outs to amounts that are customary and reasonable, the amount the plaintiff-servers were required to tip out does not violate the FLSA.

**D.**

 Plaintiffs make two other arguments that we deal with here summarily. Plaintiffs argue that all employer-required tip outs in any form violate the FLSA. Plaintiffs rely on the phrase in subsection 203(m) that only authorizes the use of a tip credit if "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m) (1994). Plaintiffs' argument fails because this language expressly permits the "pooling of tips" and does not bar employers from requiring tip pooling. Additionally, Department of Labor regulations and court decisions interpreting subsection 203(m) of the FLSA recognize that mandatory tip-out provisions are permissible forms of tip sharing. *See* 29 C.F.R. § 531.54 (1996) (distinguishing between "[w]here employees practice *tip splitting*, as where waiters give a portion of their tips to busboys" from voluntary tip pooling—"whereby the employer redistributes the tips to the employees upon some basis to which they have mutually agreed among themselves"); *Continental Cuisine*, 751 F.Supp. at 801 (upholding tip

---

7. The magistrate judge stated that "neither the statute nor the applicable federal regulations place any limitation on the amount of tips that may be contributed to a tip pool." While the magistrate judge is correct that there is no express limitation in the FLSA, the requirement of a minimum wage does limit how much an employer can require a server to tip out. For example, Outback could not require a server to tip out such a high percent of tips that the server no longer received the minimum wage.

pool where "[w]aiters and waitresses ... are required to make ... contributions"); *Bonham*, 476 F.Supp. at 101–02 (noting that "mandatory pooling with busboys is not prohibited by Section 203(m)" and citing 29 C.F.R. § 531.54).

Plaintiffs also argue that Outback's definition of total gross sales is "unreasonable, excessive, and/or contrary to law" because it includes items for which servers often do not receive tips. In effect, this argument is the same as plaintiffs' argument discussed above that Outback required an *excessive* tip out. We reject this argument because plaintiffs cite to no law that supports it or distinguishes it from the argument discussed above in section II.C.

## III. Conclusion

For the preceding reasons, we affirm the grant of summary judgment in favor of Outback except as to the issue of whether Outback informed plaintiffs Madison, Badal, and Andrews of its intent to treat tips as satisfying part of the Outback's minimum wage obligation. We reverse on this issue and remand to the District Court for further proceedings consistent with this opinion.