JAMES L. DENNIS, Circuit Judge,
concurring in the judgment:
The question in this case is how to distinguish those employees who “customarily and regularly receive tips,” 29 U.S.C. § 203(m), from those who do not. Given the prevalence of undesignated tips — ie., those left without express instructions as to who are the intended recipients — the question has attendant difficulties. I agree with much of the majority’s analysis of the issue.[1] Respectfully, however, I write separately to explain certain problematic aspects of its analysis and to provide additional, hopefully helpful, guidance for future cases in this area.[2]
The majority sets the following rule: “[I]n determining whether an employee customarily and regularly receives tips, a court — or a factfinder — must consider the extent of an employee’s customer interaction.” Ante, at 193. In so considering, the majority instructs courts and factfinders to adopt the following (hopefully rebuttable) presumption: “A customer is more likely to tip someone with whom he has contact....” Id. This is probably a helpful rule of thumb for most cases but, respectfully, I think that it will lead the Court or factfinder astray in others. For example, hotel guests rarely interact with the housekeeping staff but nevertheless often leave tips for them.[3] Conversely, a restaurant’s owner or manager might spend much of the evening asking customers how their meals were, but customers never tip him for his interaction. A nightclub’s bouncer may have to “interact” (a clear understatement) with customers, and yet it’s virtually unknown for anybody to tip him after picking themselves up off the pavement.[4] In *196 each of these examples, contrary to the majority’s assumption, there is clearly no correlation between the amount of customer interaction and the likelihood of a tip.
Next, the majority sets this rule: “A court or factfinder should also consider whether the employee is engaging in customer service functions....” Id. The problem here is that it is unclear what exactly the majority has in mind when it refers to “customer service.” For example, I think most people would consider grocery store cashiers as providing “customer service,” and yet in my experience people only rarely, if ever, tip them.[5]
Thus, in determining which employees “customarily and regularly receive tips,” the majority’s presumptions about “customer interaction” and “customer service” may be helpful in some circumstances, with respect to some jobs — indeed, I think they are helpful guideposts in this case involving a fine-dining restaurant and its “coffeeman” — but will inevitably prove counterproductive in others, such as those I have outlined. As I read the majority’s opinion, it does not disagree. Cf. ante, at 194 (“Determining whether an employee is one who ‘customarily and regularly receives tips’ is a fact-intensive inquiry that requires a case-by-case analysis of the employee’s duties and activities.”). In future cases in which “customer interaction” and “customer service” prove to be false indicators of the receipt of tips, courts should understand the limited nature of the majority’s guidance here, which was crafted with a particular fine-dining restaurant and one of its employees in mind, and not feel obliged by today’s decision to adopt presumptions that conflict with the factual reality in the case at hand. Cf. Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 466, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (“[PJresumptions that [do not] rest on ... actual ... realities are generally disfavored....”).
How, then, should future courts separate those employees who “customarily and regularly receive tips” from those who do not? What is needed is a neutral analysis, applicable in all circumstances, that is consonant with our country’s many peculiar norms and practices of tipping as they vary from one position or business to another. Put another way, courts need an analytical framework that can be applied in all cases to reach rational results. See Herbert Wechsler, Toward Neutral Principles of Constitutional Law, 73 Harv. L.Rev. 1, 15 (1959) (“[T]he judicial process ... must be genuinely principled, resting ... on analysis and reasons quite transcending The immediate result that is achieved. To be sure, the courts decide, or should decide, only the case they have before them. But must they not decide on grounds of adequate neutrality and generality ... ?”). The relevant regulations and persuasive case law provide the following:
*197 First, and of principal importance, is the precise meaning of “tips.” “A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him.... Whether a tip is to be given, and its amount, are matters determined solely by the customer, who has the right to determine who shall be the recipient of the gratuity.” 29 C.F.R. § 531.52 (emphasis added). Therefore, the central focus of the inquiry into whether an employee “customarily and regularly receive tips” must be, who do the customers intend to receive their tips? Accord ante, at 193 (“[T]the goal of the inquiry [is] determining the customer’s intent.”); see also Wajcman v. Inv. Corp. of Palm Beach, No. 9:07-CV-80912, 2009 WL 465071, at *4 (S.D.Fla. Feb. 23, 2009) (“Indeed, the federal regulations, as well as the legislative history of the statute itself, indicate that it is the customer’s expectation and intent that provides the basis for determining who qualifies as a ‘tipped employee.’”). Of course, a customer may intend for more than one person to receive the tip. For example, after movers finish unloading furniture into a new home, the customer may hand cash to one member of the crew with the expectation that it will be shared with the others. Likewise, a restaurant patron may leave cash on the table with the expectation that the waiter, who is most likely to pick it up, will share it with the bartender who prepared the patron’s cocktail or the- busboy who cleaned the table.
Second, “customarily.” Customs are “habitual or usual practice^]; common way[s] of acting.” Oxford English Dictionary (online ed.), available at http://www. oed.com (last visited Aug. 27, 2015); see also Merriam-Webster Dictionary (online ed.), available at http://www.merriamwebster.com (last visited Aug. 27, 2015) (defining customs as, inter alia, “practice[s] common to many or to a particular place or class ... ”). Thus, the question becomes: Is there a habitual and usual practice among the business’s customers to tip — i.e., to present money with the intent that it be received by — the position of the employee at issue in the case?
Third, “regularly.” For an employee to “regularly” receive tips, the employee at issue must in fact receive tips with a frequency that is “greater than occasional, but ... may be less than constant.” See 29 C.F.R. § 531.57. Here, the focus is not on the customer but rather on the employee and whether that employee actually receives tips with sufficient frequency.
There is overlap between “customarily” and “regularly” receiving tips, but the concepts are distinct. See Ford v. Lehigh Valley Rest. Grp., Inc., No. 3:14-CV-227, 2014 WL 3385128, at *3 (M.D.Pa. July 9, 2014) (“[T]he adverbs ‘customarily’ and ‘regularly’ are stated in the conjunctive rather than the disjunctive. As such, the FLSA’s plain meaning requires employees to customarily and regularly receive tips to be included in the tip pool.”). For example, there may be a “custom” of tipping a moving crew upon completion of a move, but if every move requires on average, say, a week on the road, and there is downtime between moves, then the crew members probably do not “regularly” receive tips.
To summarize, when a court must determine whether a particular employee “customarily and regularly receives tips” under 29 U.S.C. § 203(m), the inquiry should be, essentially: At the specific business involved in the case, do the customers, as a habitual and usual practice (i.e., customarily), present money with the intent that the employee in question receive it as a gift or gratuity in recognition of a service the employee performed (i.e., as a tip for that employee), and does the employee in fact regularly receive such tips? If so, then *198 that employee “customarily and regularly receives tips.”
The issue of customer intent is necessarily a highly fact-bound inquiry that requires drawing reasonable inferences from the available concrete but circumstantial evidence. Cf., e.g., United States v. Trejo, 610 F.3d 308, 315 (5th Cir.2010); United States v. Paul, 274 F.3d 155, 162 (5th Cir.2001). When intent is unclear — as it likely will often be, given our nation’s peculiar tipping norms — courts can draw inferences from common experience; for example, the court may presume that it is unusual for restaurant patrons to tip the chef. But because the court’s job is to assess reality, not dictate it, such assumptions must never override the concrete evidence; a tip jar with a “for the chef’ label indicates tips for the chef no matter how uncommon a court may think such tips are. Cf. Parham v. J.R., 442 U.S. 584, 602, 99 5.Ct. 2493, 61 L.Ed.2d 101 (1979) (“As with so many other legal presumptions, experience and reality may rebut what the law accepts as a starting point... ,”).[6]
Applying the foregoing analysis to the facts of this case, I agree with the majority that there is a genuine dispute as to whether the coffeeman at Tony’s restaurant in Houston, who prepares coffee in the kitchen, outside the view of the customers, “customarily and regularly receives tips.” It is reasonable to infer that the restaurant’s customers, who are probably wholly unaware of the coffeeman’s existence, most likely intend to tip their waiter or the bartender, if anyone, for the preparation of their coffee, but not the coffeeman.
Accordingly, with these additional thoughts, I respectfully concur in the majority’s judgment that the restaurant is not entitled to summary judgment on the record presented for our review.

. I will note my agreement with two of the majority’s most important points. First, I agree that an employee cannot be deemed to “customarily and regularly receive tips” merely because of a mandatory policy requiring that other workers share their tips with him. Ante, at 189-90. To hold otherwise would indeed “be circular.” Id. at 189-90. Second, I agree that the employee's job title is not controlling. Id. at 191-92.

. The difficulties attendant in determining which employees "customarily and regularly receive tips” are manifest in the disarray of analytic approaches courts have taken to resolve the question. E.g., does an employee “receive tips” merely because the employer has a mandatory policy that requires other employees to share tips with him? Compare Kilgore v. Outback Steakhouse of Florida, Inc., 160 F.3d 294, 301 (6th Cir.1998) (yes), with, e.g., Chan v. Triple 8 Palace, Inc., No. 1:03-CV-6048, 2006 WL 851749, at *14 n. 22 (S.D.N.Y. Mar. 30, 2006) (no). In determining whether an employee “customarily and regularly receives tips,” does the inquiry turn on the employee’s individual duties or the profession to which the employee belongs? Compare Kilgore, 160 F.3d at 301 (the latter, essentially), with Pedigo v. Austin Rumba, Inc., 722 F.Supp.2d 714, 730 (W.D.Tex.2010) (the former). Must the employee interact with customers? Compare Ford v. Lehigh Valley Rest. Grp., Inc., No. 3:14-CV-227, 2014 WL 3385128, at *4 (M.D.Pa. July 9, 2014) (yes), with Lentz v. Spanky’s Rest. II, Inc., 491 F.Supp.2d 663, 671 n. 5 (N.D.Tex.2007) (no). The question presented in this case quite plainly is in need of a clear answer.

.Marnie Hunter, Hotel Housekeeping: Do You Tip?, CNN (Aug. 24, 2011), http://www. cnn.com/2011/TRAVEL/06/24/hotel. housekeeping.tipping/ ("Survey data shows that about 30% of U.S. hotel guests leave tips for hotel housekeepers.... ”).

. I borrowed this clever example from Wajcman v. Investment Corporation of Palm Beach, No. 9:07-CV-80912, 2008 WL 783741, at *4 (S.D.Fla. Mar. 20, 2008) (observing that, "[w]hile the [bouncer's] job might entail significant customer interface, it does not involve the exchange of pleasantries or provision of personal services that ordinarily evokes tipping generosity”). See also Stewart v. CUS Nashville, LLC, No. 3:ll-CV-342, 2011 WL 2600622, at *3 n. 2 (M.D. Tenn. June 29, 2011) ("[T]he court is not convinced that a bouncer who had largely unpleasant, confrontational, or hostile interactions with customers would be eligible for a tip pool.”).

. See, e.g., Amy Dickinson, No Taste for Rehash at Thanksgiving, Chicago Tribune (Nov. 14, 2009), http://articles.chicagotribune.com/ 2009-1 l-14/news/091113033 l_l_girlfriend brother-dinner ("It's as absurd as tipping the grocery cashier!”).

. Of course, the manner in which the court assesses the evidence and draws its inferences of customer intent will vary in different procedural postures. This case came before the court on the motion of Tony’s restaurant for summary judgment. On such a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.” Tolan v. Cotton, — U.S.-, 134 S.Ct. 1861, 1863, 188 L.Ed.2d 895 (2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Therefore, we must infer, if the evidence allows it when viewed in the light most favorable to the plaintiffs, that customers do not intend for the restaurant's "coffeeman” to receive their tips.