NEALON, J.,
Two former servers at local Red Robin restaurants have instituted this class action lawsuit asserting violations of the minimum wage provisions of the Minimum Wage Act of 1968 (“MWA”), 42 RS. § 333.102 et seq. The MWA permits employers to satisfy their minimum wage obligation of $7.25/hour to “tipped employees” by paying a minimum wage of $2.83/hour and utilizing a “tip credit” in the amount of $4.42/hour to satisfy the difference between $7.25/ hour and $2.83/hour. Like its federal counterpart, the Fair Labor Standards Act of 1938 (“FLSA”), 29 U.S.C. § 201 et seq., the MWA’s “tip credit” provisions enable employers to implement a tip pooling arrangement among their employees, provided that the sharing of pooled tips to satisfy the minimum wage requirement is restricted to “employees who customarily and regularly receive tips.”
Plaintiffs allege that the “customarily and regularly receive tips” test limits tip pool sharing to “front-of-the-house” staff like servers, bartenders, hosts and busboys who have direct customer interaction, and does not permit “back-of-the-house” staff such as cooks, dishwashers and janitors to participate in a tip pool since they do not typically interact with customers and regularly receive tips. Plaintiffs maintain that defendant, Lehigh Valley Restaurant Group, Inc. (“Red Robin”) improperly *160 allowed “expos” to share in the tip pool proceeds to supplement their hourly wage of $5.00/hour even though the expos were “back-of-the-house” employees who rarely interacted with customers since their job duties entailed assisting in food preparation, assuring that the prepared meals conformed with customers’ orders, and correcting food orders that did not adhere to Red Robin’s standards. Arguing that Red Robin was obligated to pay its expos $7.25 an hour, rather than subsidizing their substandard wages with pooled tips earned by servers through customer interaction and service, plaintiffs seek to recover on behalf of themselves and other similarly-situated servers the tip pool proceeds that Red Robin distributed and credited to expos in attempting to fulfill its minimum wage obligations to the expos under the MWA. Red Robin has filed preliminary objections seeking to dismiss the MWA claim on the ground that customer interaction is irrelevant in determining whether particular employees “customarily and regularly receive tips” so as to be entitled to share in tip pool funds. In the alternative, Red Robin seeks to stay this state litigation pending the outcome of a companion federal case based upon identical statutory language contained in the FLSA.
The phrase “customarily and regularly receives tips” in Section 3(d) of the MWA, 43 P.S. § 333.103(d), has yet to be interpreted by any Pennsylvania court. However, the great weight of the federal authority construing the same language in the FLSA has concluded that the level of customer interaction is relevant in deciding whether employees “customarily and regularly receive tips” so as to be eligible to share in tip pool proceeds. Based upon the sound reasoning of that federal precedent, and in light of the MWA’s remedial purpose, the degree of direct customer interaction and service is likewise a relevant *161 consideration under Section 3(d) of the MWA in deciding whether an employee is entitled to participate in a tip pool. Since plaintiffs have averred that Red Robin’s expos “rarely interact with restaurant customers” and “are not the types of employees who customarily and regularly receive tips from customers,” Red Robin has not established as a matter of law that expos “customarily and regularly receive tips” for purposes of 43 RS. § 333.103(d). Nor has Red Robin demonstrated that a stay is warranted under the doctrine of lis pendens. Therefore, for the reasons set forth at length below, Red Robin’s preliminary objections will be overruled.
I. FACTUAL BACKGROUND
According to the well-pleaded factual allegations of the class action complaint, plaintiffs were formerly employed as “servers” at Red Robin restaurants in Dickson City, Lackawanna County, and Wilkes-Barre, Luzerne County. (Docket entry no. 1 at ¶¶ 5, 8-9). Plaintiffs contend that Red Robin required its servers to purchase “company-authorized shirts bearing the Red Robin name and logo” through mandatory deductions from their paychecks. (Id. at ¶ 10-11). Asserting that the Red Robin uniforms were required “for the benefit and convenience” of Red Robin, rather than its servers, and that Red Robin “did not obtain written authorization from the Pennsylvania Department of Labor & Industry for the uniform deductions,” plaintiffs aver that the Wage Payment and Collection Law (“WPCL”), 42 P.S. § 260.1 et seq., “prohibits employers from making pay deductions for employee uniforms that are not for the convenience of employees,” and seek to obtain “[reimbursement of all uniform deductions” on behalf of themselves and similarly-situated Red Robin servers. (Id. at^ 11-12, 35-36).
*162 Plaintiffs also aver that Red Robin “pays plaintiffs and other servers an hourly wage of $2.83 plus a portion of their tips,” and “in seeking to satisfy the MWA’s mandate that employees receive a minimum wage of $7.25/hour, [Red Robin] utilizes a ‘tip credit’ in the amount of $4.42 for each hour worked by plaintiffs and other servers.” (Id. at ¶ 13). “At the end of each work shift, [Red Robin] requires plaintiffs and other servers to contribute an amount equaling 3% of their gross sales to a ‘tip pool.’” (Id. at ¶ 14). Plaintiffs allege that the servers “tip pool” contributions are distributed, inter alia, to “expos” who work “in or near the kitchen area” and whose job responsibilities are “to fix any orders that do not adhere to the Red Robin standard or recipe, to help prepare food when the kitchen is extremely busy, and to check the flow of tickets and make sure the orders match what’s on the plates.” (Id. at ¶¶ 15-16).
Expos “rarely interact with restaurant customers,” and “are not the types of employees who customarily and regularly receive tips from customers.” (Id. at ¶¶ 16-17). Plaintiffs submit that “[t]he [MWA] entitles employees to a minimum wage of $7.25/hour for hours worked under 40 in a week, [citations omitted], and $ 10.875/hour for hours worked over 40 in a week, [citation omitted],” and “prohibits an employer from utilizing a tip credit to satisfy its minimum wage obligations to an employee where such employee contributes to a tip pool that it distributed to other employees who do not customarily and regularly receive tips.” (Id. at ¶¶ 28-29). Plaintiffs posit that “[b] ecause expos do not customarily and regularly receive tips, [Red Robin’s] policy of distributing tip pool proceeds to expos prohibits [Red Robin] from utilizing a tip credit to satisfy its minimum wage obligations to plaintiffs and the class members.” (Id. at ¶ 30). Based upon that reasoning, plaintiffs argue that “during a time period in which expos *163 shared in the tip pool, [Red Robin] violated the [MWA’s] minimum wage and, in some instances, overtime pay mandate.”[1] (Id).
Red Robin has filed preliminary objections seeking to dismiss plaintiffs’ MWA claim on the ground of legal insufficiency, or, in the alternative, to stay this litigation pending the conclusion of the parties’ federal suit “where the parties are litigating the threshold legal issue of whether the term ‘customarily and regularly receives tips’ means that employees must directly interact with customers to receive tip pool funds.” (Docket entry no. 4 at ¶¶ 25-26, 34, 40). Red Robin contends that the MWA, not unlike the FLSA, allows an employer to “require a tipped employee to pool tips with other employees ‘who customarily and regularly receive tips,”’ and argues that federal regulations adopted by the United States Department of Labor state “that funds received through a tip pool count in determining whether the receiving employee ‘customarily and regularly’ receives tips,” but “mention nothing about direct customer interaction.” (Id. at ¶¶ 15, 20-21). Red Robin submits that “[b]ecause the FLSA does not require that an employee have direct customer interaction to ‘customarily and regularly receive tips,’ then he [MWA], which features identical language, likewise does not require that employers have direct customer interaction to receive tip pool funds.” (Id. at ¶ 22).
*164 Employing that rationale, Red Robin demurs to Count I of the class action complaint alleging violations of the MWA, and contends that the MWA, “like the FLSA, only prohibits employers from sporadically including employees in a tip pool” but that plaintiffs “do not allege that [Red Robin] sporadically required servers to pool tips with expos.” (Id. at ¶¶ 23-24,26). Red Robin alternatively argues that “[t]he court should stay plaintiffs’ [MWA] claim because that claim arises from the same factual allegations and liability theory as plaintiffs’ previously-filed FLSA claim.” (Id. at ¶ 31). Claiming that the prospect of both cases “proceeding simultaneously would require a duplication of effort by the parties, waste judicial resources, and create an unnecessary race to judgment,” Red Robin contends that plaintiffs’ MWA claim should be stayed “until final resolution of plaintiffs’ FLSA claim currently pending in federal court,” as a result of which “[t]he parties will litigate in this court only plaintiffs’ [WPCL] action in Count II.” (Id. at ¶¶ 36, 40-41).
In their reply, plaintiffs note that Red Robin advanced an identical argument in the companion federal suit, and that Senior U. S. District Judge James “Munley held that ‘to properly participate in a tip pool a restaurant employee must have direct customer interaction.’” (Docket entry no. 15 at p. 7). Citing numerous federal rulings, plaintiffs maintain that the expos’ level of customer interaction is highly relevant in determining whether an employee “regularly and customarily receives tips” so as to be entitled to participate in a mandatory tip pool. (Id. at pp. 8-12). In addition, plaintiffs submit that Red Robin “did not merely use customer tips to subsidize its minimum wage obligations to plaintiffs and other servers,” but also improperly “used customer tips to subsidize the wages of expos, who otherwise received only $5.00/hour from *165 [Red Robin].” (Id. at p. 3). Plaintiffs claim that Red Robin “is responsible for paying its expos a living wage” of at least $7.25 per hour, and that “[t]his responsibility cannot be pushed off on waiter, waitresses, and the tipping customers” in the form of an “illegal and unfair” tip pool sharing arrangement. (Id. at p. 4).
Finally, plaintiffs assert that a stay of this proceeding is unwarranted since the appellate courts have endorsed “hybrid” class action lawsuits that are predicated upon federal and state law. (Id. at p. 12). Noting that the existence of “two separate actions” in federal and state court was created by Red Robin’s own “litigation tactics” in “unnecessarily moving to sever plaintiffs’ [MWA/ WPCL] claims from the [federal] action,” plaintiffs aver that Red Robin “incorrectly assumes that the parties must ‘duplicate’ discovery to litigate the federal and state court actions” when, “in reality, both parties may use the discovery obtained in the [federal] action to litigate this state court action and vice versa” (Id.). Plaintiffs submit that Red Robin’s judicial economy argument is particularly disingenuous since the parties will still be required to litigate the pending WPCL claim even if the MWA claim is stayed. (Id. at p. 13). Thus, they request that Red Robin’s “preliminary objections to Count I of the complaint” be overruled and that Red Robin’s “alternative request for a partial litigation stay” be denied. (Id.).
II. DISCUSSION
(A) STANDARD OF REVIEW
Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. HRANEC Sheet Metal Inv. v. Metalico Pittsburgh. Inc., 107 A.3d 114, 118 (Pa. Super. 2014). The question presented by a demurrer *166 “is whether, on the facts averred, the law says with certainty that no recovery is possible.” Bruno v. Erie Ins. Co., 106 A.3d 48, 56 (Pa. 2014); Eastern Roofing Systems. Inc. v. Cestone, 24 Pa. D. & C. 5th 394, 403 (Lacka. Co. 2012). In making that determination, “the trial court must accept as true all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts.” Bargo v. Kuhns, 98 A.3d 686, 689 (Pa. Super. 2014). “If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.” Lenau v. Co-eXprise. Inc., 102 A.3d 423, 439 (Pa. Super. 2014); Lilac Meadows. Inc. v. Rivello, 25 Pa. D. & C. 5th 250, 258 (Lacka. Co. 2012).
(B) FLSA&MWA
The FLSA, which was originally enacted in 1938, and the current MWA, which was adopted in 1968, recognize the adverse effects “of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers,” 29 U.S.C. § 202(a), and the “evils of unreasonable and unfair wages as they affect some employes employed in the Commonwealth of Pennsylvania....”[2] 43 P.S. § 333.101. Both statutes establish a mandatory minimum wage that is presently fixed at $7.25 an hour. See 29 *167 U.S.C. § 206(a)(1)(C); 43 P.S. § 333.104(a.l) (statingthat if the minimum wage set forth in the FLSA “is increased above the minimum wage required” under the MWA, the minimum wage required under the MWA “shall be increased by the same amounts and effective the same date as the increases under the Fair Labor Standards Act”). In 1966, “Congress added restaurant workers to the list of protected workers under the FLSA,” and “adopted the concept of a tip credit which allowed employers to credit an employee’s tips to satisfy the federal minimum wage requirement” and also approved “the practice of tip pooling among customarily and regularly tipped employees.” Neil Patrick McConnell, Mr. Pink Never Leaves a Tip: How Current Tip Credit and Tip Pool Guidelines Leave Employees at the Mercy of Employers, 114 Penn. St. L. Rev. 621, 623 (Fall 2009) (citing S. Rep. No. 89-1487 (1966)).
Specifically, in defining the term “wage,” Section 203(m) of the FLSA sets forth special provisions applicable to “a tipped employee,” and states that the required minimum wage for such an employee “shall be an amount equal to (1) the cash wage paid” to the employee “and (2) an additional amount on account of the tips received” by that employee, which tip amount “is equal to the difference between” the cash wage paid and the minimum wage in effect under the FLSA. 29 U.S.C. § 203(m). The FLSA further provides that the tip credit allowance “shall not apply with respect to any tipped employee” unless “such employee has been informed by the employer” of the tip pooling arrangement, and “all tips received by such employee have been retained by the employee.” Id. However, and more importantly for purposes of Red Robin’s demurrer, Section 203(m) expressly states that the foregoing tip credit requirements “shall not be construed *168 to prohibit the pooling of tips among employees who customarily and regularly receive tips.” Id.
Section 3(d) of the MWA defines the word “wage” in the context of “a tipped employe” in language virtually identical to 29 U.S.C. § 203(m). Section 3(d) states that the statutorily required minimum wage payable to “a tipped employe” must “be an amount equal to: (i) the cash wage paid” to the employe and “(ii) an additional amount on account of the tips received by the employe which is equal to the difference between the wage specified in (i)” and the minimum wage in effect under the MWA. 43 P.S. § 333.103(d). Like the FLSA, the MWA provides that the tip credit calculation “shall not apply with respect to any tipped employee unless: (1) [s]uch employe has been informed by the employer” of the tip credit arrangement; and “(2) [a] 11 tips received by such employe have been retained by the employe....” 43 P.S. § 333.103(d)(l)-(2). Additionally, the MWA likewise states that its tip credit provisions “shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.” 43 P.S. §333.103(d)(2).
Consequently, under federal and state law, an employer may satisfy its minimum wage obligations by including an employee’s tips in the minimum wage determination. Stated otherwise, an employer may pay an employee a cash wage below the stated minimum wage of $7.25 an hour, provided that the employer supplements that shortfall with the employee’s tips. The employer may utilize such a “tip credit” toward the minimum wage only if the employer informs the employee of the “tip credit” practice and the employee retains all tips received by the employee. Notwithstanding that fact, the employee may *169 receive tips pursuant to a tip pooling arrangement, but only if the tip pool is shared exclusively among employees who customarily and regularly receive tips.
Neither the FLSA nor the MWA provides any guidance as to the specific types of employees “who customarily and regularly receive tips.” Section 203(t) of the FLSA defines a “tipped employee” as “any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips.” 29 U.S.C. § 203(t) (emphasis added). Although the MWA does not contain a definition of a “tipped employee,” the Pennsylvania Department of Labor and Industry has adopted a regulation defining a “tipped employee” as “[a]n employee engaged in an operation in which the employee customarily and regularly receives more than $30 a month in tips.” 34 Pa. Code § 231.1(b) (emphasis added). The federal regulation addressing “tipped employees” under Section 203(t) of the FLSA states that “[t]he phrase ‘customarily and regularly’ signifies a frequency which must be greater than occasional, but which may be less than constant.” 29 C.F.R. § 531.57. The Pennsylvania Code does not include a comparable regulatory definition of the phrase “customarily and regularly” for purposes of Section 3(d) of the MWA.
A separate federal regulation entitled “Tipped pooling” identifies “busboys” as individuals who may share in a tip pool, and provides that “[w]here employees practice tip splitting, as where waiters give a portion of their tips to the busboys, both the amounts retained by the waiters and those given to the busboys are considered tips of the individuals who retain them, in applying the provisions of Section 3(m) and 3(t)” of the FLSA. 29 C.F.R. § 531.54. In an apparent effort to provide clarity regarding the categories of employees who may be included in a tip pool, *170 the U.S. Senate Committee on Labor and Public Welfare listed waiters, waitresses, bellhops, countermen, busboys and service bartenders as employees who customarily and regularly receive tips, with janitors, dishwashers, chefs and laundry room attendants being identified as employees who are not eligible to participate in a valid tip pool. See Roussell v. Brinker International, Inc., 2008 WL 2714079, at *6 (S.D. Tex. 2008) (quoting S. Rep. 93-690, at 43 (Feb. 22, 1974)), aff’d, 441 Fed. Appx. 222 (5th Cir. 2011); McConnell, 114 Penn St. L. Rev. at 632 (same). The U.S. Department of Labor Field Operations Handbook echoes the Senate Report and contains the same examples and controlling language almost verbatim.[3] Galicia v. 63-68 Diner Corp., 2015 WL 1469279, at *5 n.6 (E.D.N.Y. 2015) (citing DOL Field Operations Handbook Ch. 30, § 30d04(a, c) (Dec. 9, 1988)); Roussell, supra, at *7 (same). Additionally, the U.S. Department of Labor has issued an opinion letter stating that “[t]he legislative history of the 1974 Amendments to the FLSA...indicates that waiters, bellhops, waitresses, countermen, busboys, and service bartenders are among those who may participate in a tip pool,” whereas “an employer will lose the benefit of the exception from the tip-retention requirement if tipped employees are required to share their tips with employees who do not customarily and regularly receive tips, such as janitors, dishwashers, chefs, or laundry room attendants.”[4] *171 Mould v. NJG Food Service. Inc., 37 F. Supp. 3d 762, 770 (D. Md. 2014) (quoting DOL Opinion Letter, 1997 WL 998047 (Nov. 4, 1997)). Essentially identical information is contained in Fact Sheet No. 15: Tipped Employees Under the Fair Labor Standards Act (FLSA) published by the U. S. Department of Labor. See Yoram Margalioth, The Case Against Tipping, 9 U. Pa. J. Lab. & Emp. L. 117, 141 n.113 (Fall 2006).
In sum, employers are exempt from paying their employees the current minimum wage of $7.25 an hour if the employer subsidizes the deficiency pursuant to a tip pool in which only those “employers who customarily and regularly receive tips” are entitled to share in the pooled tips. See 29 U.S.C. § 203(m); 43 P.S. § 333.103(d)(2). With the benefit of the foregoing statutory and regulatory background, we will address the merits of Red Robin’s demurrer asserting that direct customer interaction, upon which plaintiffs have predicated their MWA argument, is irrelevant in determining whether “expos” customarily and regularly receive tips so as to be eligible to participate in a tip pool.
(C) RELEVANCE OF DIRECT CUSTOMER INTERA CTION
Plaintiffs aver that Red Robin’s “expos” work “in or near the kitchen area” where they assist in food preparation, ensure that the finished food product corresponds with the customers’ orders, and correct any food orders that do not comply with Red Robin’s standards. (Docket entry no. 1 at ¶¶ 15-16). Plaintiffs assert that expos “rarely interact with restaurant customers” and are ineligible to share in tip pools since they “are not the types of employees who customarily and regularly receive tips from customers.” {Id. at ¶¶ 16-17). Plaintiffs submit that “[a]t its core, *172 this lawsuit addresses the legality of a restaurant chain’s diversion of waiters’ and waitresses’ hard-earned tips to pay other restaurant employees who do not interact with customers.” (Docket entry no. 15 at p. 4).
In seeking to dismiss plaintiffs’ MWA claim, Red Robin argues that “[t]he FLSA and [MWA] feature identical language, and, as such, the statutes should be interpreted identically.” (Docket entry no. 8 at p. 7). Red Robin stresses the fact that “[n] either the FLSA’s language, nor the DOL’s regulations mentions anything about customer interaction, direct or otherwise.” (Id. at p. 9). Relying upon its analysis of federal law, Red Robin contends that “customer interaction is irrelevant” under Section 203(m) of the FLSA, and that “[a]s a result, the [MWA] does not require that tip pool recipients have direct customer interaction.” (Id. at pp. 7, 14).
The first federal appellate reference to the significance of direct customer interaction in determining whether an employee “customarily and regularly receives tips” for purposes of 29 U.S.C. § 203(m) is found in Kilgore v. Outback Steakhouse of Florida, Inc., 160 F.3d 294 (6th Cir. 1998). In finding that “hosts at Outback are part of an occupation that customarily and regularly receive tips,” the United States Court of Appeals for the sixth circuit reasoned that hosts “sufficiently interact with customers” since “they greet customers, supply them with menus, seat them at tables, and occasionally ‘enhance the wait.’” Id. at 301. Noting that hosts “have more than de minimis interaction with the customers” and are more akin to a maitre d’, see Dole v. Continental Cuisine, Inc., 751 F. Supp. 799, 800-801 (E.D. Ark. 1990) (upholding a mandatory tip pool which included a maitre d’ whose responsibilities included greeting and seating customers, *173 serving the first drink to customers, and assisting servers in serving customers as needed), the Kilgore court “rejected] plaintiffs’ argument that outback’s tip credit and tip pool [are] invalid because outback hosts are not employed ‘in an occupation in which they customarily and regularly receive tips.’” Id. at 301-302 (citing Ekins v. Showcase, Inc., 704 P.2d 977, 989 (Kan. 1985) (concluding that non-service bartenders were not “tipped employees” because they “were located behind a wall so that they did not have any contact with customers and were not in a position to receive tips”)).
Citing Kilgore with approval, the sixth circuit court of appeals later held that “salad preparers” could not be categorized as “tipped employees” under 29 U.S.C. § 203(m) since they “abstain from any direct intercourse with diners” and “performed duties traditionally classified as food preparation or kitchen support work.” Myers v. The Copper Cellar Corp., 192 F.3d 546, 550 (6th Cir. 1999). The only other federal circuits which have considered the proffered relevance of direct customer interaction under Section 203(m) have agreed with the Sixth Circuit’s analysis. See Shahriar v. Smith & Wollenskv Restaurant Group, Inc., 659 F.3d 234, 240 (2d Cir. 2011) (“Under the FLSA an employer may not avail itself of the tip credit if it requires tipped employees to share their tips with employees who do not ‘customarily and regularly receive tips.’ [citation omitted]. Thus, an employer loses its entitlement to the tip credit where it requires tipped employees to share tips with (1) employees who do not provide direct customer service or (2) managers”); Roussell v. Brinker International, Inc., 441 Fed. Appx. 222, 231 (5th Cir. 2011) (“We conclude that the district court reasonably found direct customer interaction ‘highly relevant’ to tip-eligibility”). The clear majority of the federal district courts *174 that have addressed the importance of direct customer interaction in determining whether an employee qualifies as someone “who customarily and regularly receives tips” similarly deem such customer interaction to be a relevant consideration. See, e.g., Conners v. Catfish Pies, Inc., 2015 WL 632236, at *2 (E.D. Ark. 2015) (citing Roussell and Kilgore and holding that “defendants’ cooks are not tipped employees” since “nothing in defendants’ description of cooks’ duties indicates that they are required to interact with customers more than occasionally”); Alvarado v. Five Towns Car Wash. Inc., 2014 WL 4678258, at *2 (E.D.N.Y. 2014) (“In determining whether an employee customarily and regularly receives tips, the Court ‘focuses on whether the employee in question is part of an occupation that customarily and regularly receives tips, and whether they have more than de minimis interaction with customers as a part of their employment’”); Mould, 37 F. Supp. 3d at 770 (finding that “cooks, crab steamers, and prep cooks” were not “employees who customarily and regularly receive tips” since “at best, some of the kitchen staff occasionally had limited contact with customers,” but “that those cooks, crab steamers and prep cooks who were not on ‘counter help’ duty ‘abstained from any direct intercourse with diners, worked entirely outside the view of patrons, and solely performed duties traditionally classified as food preparation or kitchen support work, and therefore could not be validly characterized as tipped employees under Section 203(m).’”) (emphasis in original); Porter v. West Side Restaurant, LLC, 2014 WL 1642152, at *10 (D. Kan. 2014) (“The case law suggests that direct customer interaction is a relevant factor in determining whether an employee ‘regularly and customarily receives tips’ and therefore can participate in a mandatory tip pool”); Chhab v. Darden Restaurants, Inc., 2013 WL 5308004, *175 at *6 (S.D.N.Y. 2013) (“When deciding whether an employee customarily and regularly receives tips, courts must determine whether the employee’s job is historically a tipped occupation and whether he has more than ‘de minimis1 interaction with customers as a part of his employment.”); Stewart v. CUS Nashville, LLC, 2013 WL 4039975, at *15 (M.D. Tenn. 2013) (“There is ample evidence in the record to demonstrate that security guards employed at company-owned Coyote Ugly saloons sufficiently interact with customers so as to constitute employees who ‘customarily and regularly receive tips’ under Kilgore”); Rubio v. Fuji Sushi & Teppani, Inc., 2013 WL 230216, at *2 (M.D. Fla. 2013) (“Courts have focused on the extent of an employee’s customer interaction as a significant factor in determining whether the employee is a customarily tipped employee”); Pedigo v. Austin Rumba, Inc., 722 F. Supp. 2d 714, 730 (W.D. Tex. 2010) (“The Southern District of Texas, a sister court of like mind on the issue, cogently explained that the level of customer interaction is highly relevant to the question of whether an employee may participate in a valid tip pool because ‘the degree of direct customer interaction distinguishes to some extent the employees identified by the Senate and the Department of Labor as eligible to participate in a mandatoiy pool from the kind of employees that are not eligible to participate in such a pool’”); Ash v. Sambodromo, LLC, 676 F. Supp. 2d 1360, 1369-70 (S. D. Fla. 2009) (“Courts determining whether an employee is a tipped employee have focused on the amount of customer interaction”); Morgan v. SpeakEasy, LLC, 625 F. Supp. 2d 632, 653 (N.D. 111. 2007) (discussing Kilgore and holding that “senior servers” had “sufficient customer interaction to establish that they were engaged in an occupation in which they ‘customarily and regularly received tips’” *176 since they “helped serve food and drinks to tables, greeted customers, and checked on tables during the dinner service.”); Townsend v. BG-Meridian. Inc., 2005 WL 2978899, at *6 (W.D. Okla. 2005) (“The cases that have considered whether a given occupation falls within the definition of a tipped employee have focused on the level of customer interaction involved in that occupation”).
In the parties’ federal litigation, Red Robin filed a motion “to dismiss the complaint, contending that its inclusion of expos in the tip pool does not violate the FLSA.” Ford v. Lehigh Valley Restaurant Group. Inc., 2014 WL 3385128, at *2 (M.D. Pa. 2014). As in the case sub judice, Red Robin asserted that the expos’ degree of customer interaction is irrelevant to whether they “customarily and regularly receive tips” for purposes of 29 U.S.C. § 203(m). Id. In rejecting that interpretation of Section 203(m), Judge Munley reviewed the federal appellate precedent and held:
Based on this case law, Section 203(m)’s plain meaning and the directive that exemptions to the FLSA are narrowly construed, we conclude that to properly take part in a tip pool a restaurant employee must have direct customer interaction. Accordingly, Section 203(m)’s requirement that employees “customarily and regularly received tips” to be included in this tip pool will be a fact intensive inquiry focusing on an employee’s level of direct customer interaction.
Here, plaintiffs allege that “expos spend almost of their time working in or near the kitchen area and rarely interact with restaurant customers.” (Compl. ¶ 18). Viewing plaintiffs’ allegations as true, this allegation, read in conjunction with plaintiffs’ remaining factual averments, may establish a cause of action under the *177 FLSA. Ergo, the court will deny defendant’s motion to dismiss.
Id. at *4.
Following Judge Munley’s ruling, Red Robin filed a “motion to certify an issue for immediate appeal and partial stay.” Ford v. Lehigh Valley Restaurant Group. Inc., 2014 WL 3867970, at *1 (M.D. Pa. 2014). Citing the holdings in Giuffre v. Marys Lake Lodge, LLC, 2012 WL 4478806 (D. Colo. 2012), Turner v. Millennium Park Joint Venture, LLC, 767 F. Supp. 2d 951 (N.D. Ill. 2011) and Lentz v. Spankv’s Restaurant II, Inc., 491 F. Supp. 2d 663 (N.D. Tex. 2007), Red Robin “assertfed] that three district court opinions outside the third circuit court of appeals are in substantial disagreement with [Judge Munley’s] determination that Section 203(m)’s plain meaning requires a level of direct customer interaction.” Ford, supra, at *3. In denying Red Robin’s motion, Judge Munley reasoned that Red Robin’s “legal authority is not in substantial disagreement with our prior decision” and actually “may support plaintiffs’ cause of action.” Id. at *4.
No federal appellate court has adopted Red Robin’s argument that “customer interaction is irrelevant” in determining whether an employee “customarily and regularly receives tips” under Section 203 (m) of the FLSA. Red Robin bases its demurrer upon the same trial court holdings in Lentz, Turner and Giuffree that it cited in support of its unsuccessful motion to dismiss the federal suit. (Docket entry no. 16 at pp. 10-12). Lentz, which cited the 1997 DOL Opinion Letter referenced in Section 11(B) above, see Lentz, 491 F. Supp. 2d at 671, no longer possesses precedential value within the Fifth Circuit in light of the appellate ruling in Roussell declaring “direct *178 customer interaction ‘highly relevant’ to tip eligibility.” Roussell, 441 Fed. Appx. at 231. Indeed, subsequent district court authority within the Northern District of Texas has acknowledged the relevance of customer interaction in determining tip pool eligibility. See, e.g., Rudy v. Consolidated Restaurant Companies, Inc., 2010 WL 3565418, at *4 (N.D. Tex. 2010) (citing Kilgore and holding that “[t]he record is clear that the maitre d’s at Silver Fox were highly involved in customer interaction and satisfaction and should be considered tipped employees as a matter of law, unless they were statutorily precluded from sharing in the tip pool because they were employers under the FLSA”).
As Judge Munley observed in his second ruling, see Ford, supra, at *3, the Northern District of Illinois decision in Turner, which quoted S. Rep. No. 93-690, primarily reasoned that “[i]n determining the tips that should be treated as having been ‘customarily and regularly received by an employee from a tip pool, a critical fact to consider is whether the arrangement is an ongoing one based on a voluntarily-arrived-at understanding.” Turner, 767 F. Supp. 2d at 954. Moreover, later holdings in the Northern District of Illinois found customer interaction to be a relevant consideration under the FLSA. See, e.g, Arango v. Landry’s, Inc., 2013 WL 3671704, at *4 (N.D. 111. 2013) (citing Kilgore and stating that “[considering the above case law, what is most central is not whether parties were paid commensurate with back-house employees, but whether or not their job functions were more like traditionally tipped employees because of their degree of customer interaction or other factors”). Last, although the district court in Giuffre did state in a footnote “that interaction with customers is not necessarily the sine qua non of the analysis,” Giuffre, supra at *4 n.4, it found that *179 “plaintiff’s evolving and increasingly vague description of the position” at issue was “insufficient to survive summary judgment” and create “a genuine dispute of material fact” to rebut the employer’s supporting affidavits that the tip-sharing employee’s responsibilities included “taking the serving trays to the tables and delivering the food to customers; checking in with customers about their meals and exchanging food if the customer has a complaint; refilling beverages; chatting with customers; and assisting the wait staff in any other way necessaiy.” Id. at *2-3 (emphasis in original).
Like Judge Munley, we do not consider the three lower court rulings cited by Red Robin to be more persuasive than the federal appellate precedent or the multiple district court holdings that deem direct customer interaction to be a relevant factor under Section 203(m). “Customarily, front-of-the-house staff like servers and bartenders receive tips,” while “[b]ack-of-the-house staff like cooks and dishwashers do not, and thus cannot participate in a mandatory tip pool.” Roussell, 441 Fed. Appx. at 231. The direct customer interaction “[tjest reflects the lists created by the Senate Committee on Labor and Welfare and the Department of Labor because those employees who are visible and have contact with patrons are the employees who are more likely to have an impact on customer service.” McConnell, 114 Penn St. L. Rev. at 632-633. We agree with Judge Munley’s sound conclusion that the level of direct customer interaction is a significant factor in determining whether employees “customarily and regularly received tips” for purposes of 29 U.S.C. § 203(m).
“Pennsylvania courts have indicated that it may be proper to interpret the M WA in light of federal interpretation *180 of the FLSA, given the substantial similarity.” Baum v. AstraZeneca LP, 605 F. Supp. 2d 669, 674 (W.D. Pa. 2009), aff’d, 372 Fed. Appx. 246 (3rd Cir. 2010), cert. denied, 562 U.S. 896 (2010). The FLSA is a remedial statute that should be liberally construed, Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325, 1334 (U. S. 2011), and “exemptions to it are construed narrowly, i.e., against the employer.” Smith v. Johnson & Johnson, 593 F.3d 280. 284 (3rd Cir. 2010). Similarly, “[i]n applying the provisions of the MWA, it should be borne in mind that the MWA is remedial legislation which should be interpreted liberally to achieve its remedial purpose,” Caiarelli v. Sears. Roebuck & Co., 616 Pa. 38, 46 n.3, 46 A.3d 643, 647 n.3 (2012) (McCaffeiy, Todd, JL, dissenting), and “as with the FLSA, the exemptions to the MWA protections are to be applied narrowly.” Anne Thibadeau, Pennsylvania Employees Protected Abroad: Extraterritorial Application of State Labor Law in Truman v. Dewolff. Boberg & Associates, Inc. and the Fair Labor Standards Act Foreign Work Exemption, 73 U. Pitt. L. Rev. 193, 202 (Fall 2011) (citing Davis v. Sulcowe, 416 Pa. 138, 141, 205 A.2d 89, 90-91 (1964)). In fact, exemptions to the MWA’s minimum wage and overtime requirements have been interpreted more narrowly than the parallel exemptions contained in the FLSA. See, e.g., Boyada Nurses. Inc. v. Com., Department of Labor and Industry, 607 Pa. 527, 555-556, 8 A.3d 866, 882-882 (2010) (holding that the domestic services exemption from the minimum wage and overtime provisions of the MWA is more narrow than the FLSA’s exemption and “more beneficial to our Commonwealth’s employees”).
To succeed with its demurrer and thereby secure the dismissal of plaintiffs’ MWA claim, Red Robin must establish that it is free and clear from doubt that customer *181 interaction is an irrelevant and inappropriate consideration in determining whether an expo “customarily and regularly receives tips” for purposes of Section 3(d) of the MWA. See Hill v. Ofalt, 85 A.3d 540, 547-548 (Pa. Super. 2014) (preliminary objections which result in the dismissal of a claim “may be sustained only where the case is free and clear of doubt”). No Pennsylvania appellate or trial court has had occasion to interpret the phrase “customarily and regularly receive tips” in 43 P.S. § 333.103(d). Nevertheless, in light of the federal appellate rulings in Roussell, Shahriar and Myers, the foregoing holdings of the district courts in Arkansas, Florida, Illinois, Kansas, Maryland, New York, Oklahoma, Tennessee and Texas, the well-reasoned opinions by Judge Munley in the companion federal litigation, and the U.S. Department of Labor’s Operations Handbook and Opinion Letter, we conclude that direct customer interaction is a relevant factor in determining whether employees “customarily and regularly receive tips” for purposes of tip pool eligibility under Section 3(d) of the MWA. See Com., Department of Labor and Industry v. Stuber, 822 A.2d 870, 873 (Pa. Cmwlth. 2003) (stating that “it is proper to give deference to federal interpretation of a federal statute when the state statute substantially parallels it”), aff’d, 580 Pa. 66, 859 A.2d 1253 (2004). Since plaintiffs have averred that Red Robin’s expos “rarely interact with customers” and function as “back-of-the-house” staff such as food preparers, Red Robin has not demonstrated that “on the facts averred, the laws says with certainty that no recovery is possible” under the MWA. See Bruno, supra. Accordingly, Red Robin’s demurrer, which is premised upon a proffered adjudication that “customer interaction is irrelevant” under 43 P.S. § 33.103(d), is without merit.[5]
*182 (D) STAY REQUEST
In the alternative, Red Robin requests that this state action be stayed pending the conclusion of the parallel federal suit since plaintiffs’ MWA claim in this case “involves the same factual allegations and liability theory *183 as plaintiffs’ previously filed FLSA claim.” (Docket entry no. 8 at p. 14). Red Robin submits that if a stay is granted, “and the federal court determines that customer interaction is not a requirement for a tip pooling arrangement under the FLSA or that the expos did, in fact, have direct customer interaction, such findings would entitle [Red Robin] to judgment on the [MWA] claim in the present case.” (Id. at pp. 14-15). Plaintiffs oppose Red Robin’s stay request and argue that the two cases may proceed forward in tandem with shared discovery in both matters. (Docket entry no. 15 at p. 12). According to plaintiffs, Red Robin’s stay proposal is particularly unwarranted since Red Robin “does not seek a stay of plaintiffs’ WPCL uniform deduction claim,” and the grant of a stay would result in multiple class certification motions and “the issuance of separate class action notice forms for separate claims.” (Id. atp. 13).
Under the doctrine of lis pendens, a defendant may seek to dismiss or stay a subsequently filed lawsuit due to the pendency of a prior action. Crutchfield v. Eaton Corp., 806 A.2d 1259, 1262 (Pa. Super. 2002). To secure a dismissal, the defendant must show that the same parties are involved, the same rights are asserted, and identical relief is sought in each action. PNC Bank. N.A. v. Bluestream Technology, Inc., 14 A.3d 831, 835 (Pa. Super. 2010); Solfanelli v. First Union National Bank, 101 Lacka. Jur. 457, 468 (2000). If the defendant cannot strictly satisfy that three-pronged identity test, the defendant may alternatively secure a stay of the later-filed action “where the litigation of two suits would create a duplication of effort on the part of the parties, waste judicial resources, and ‘create the unseemly spectacle of a race to judgment.’” Crutchfield, supra (quoting Norristown Automobile Co. v. Hand, 386 *184 Pa. Super. 269, 562 A.2d 902, 905 (1989)).
This separate state court proceeding asserting violations of the MWA and WPCL was filed due to Red Robin’s motion to dismiss those state claims in the federal suit based upon lack of supplemental jurisdiction under 28 U.S.C. § 1367. (Docket entry no. 4, Exhibit 2). The parties’ submissions and arguments reflect that the federal and state actions may proceed simultaneously without causing a duplication of effort, wasting judicial resources and inciting a race to judgment. Thus, Red Robin has not demonstrated its entitlement to a stay, and its request for an abeyance of this case will be denied.
ORDER
And now, this 24th day of April, 2015, upon consideration of “defendant Lehigh Valley Restaurant Group, Inc.’s preliminary objections to Count I of plaintiffs’ complaint,” the memoranda of law submitted by the parties, and the oral argument of counsel on March 4, 2015, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:
1. The preliminary objections of defendant, Lehigh Valley Restaurant Group, Inc., to Count I of the complaint are overruled, and defendant’s request for a stay of this proceeding is denied; and
2. Within twenty (20) days of the date of this order, defendant shall file a responsive pleading to the complaint.

. Plaintiffs originally filed a federal class action suit challenging Red Robin’s inclusion of expos in the tip pool as violative of the federal Fair Labor Standards Act (“FLSA”), 29 U.S.C. § 201 et seq., the MWA and the WPCL. See Ford v. Lehigh Valley Restaurant Group, Inc., 2014 WL 3385128 (M.D. Pa. 2014), stay pending appeal denied by, 2014 WL 3867970 (M.D. Pa. 2014). However, “[bjecause the latter two causes of action involve state statutes, the parties have agreed to litigate these claims in state court.” Id. at * 1. “Thus, the only remaining claim [in the federal action] is Count One — Violation of the FLSA’s minimum wage requirement.” (Id.).

. Pennsylvania originally adopted the Minimum Wage Act of 1937, Act of May 27, 1937, P.L. 917, 43 P.S. § 33 la et seq., establishing a ‘ ’minimum fair wage” for women and minors. See In re Fisher, 344 Pa. 96, 98-99, 23 A.2d 878, 879 (1942); Daugherty v. Continental Can Company, Inc., 226 Pa. Super. 342, 350, 313 A.2d 276, 280 (1973). The General Assembly later expanded the scope of minimum wage protection to all employees by adopting the Minimum Wage Act of 1961, Act of September 15, 1961, P.L. 1313, 43 P.S. § 333.1 etseq., Conti v. Department of Labor and Industry, 405 Pa. 309, 310, 175 A.2d 56, 57 (1961), which was later supplanted by the current Minimum Wage Act of 1968, Act of January 17, 1968, P.L. 11, as amended, 43 P.S. § 333.102 etseq. See Golfview Manor Inc. v. Com., Department of Labor and Industry, 51 Pa. Cmwlth. 323, 329 n.9, 414 A.2d 722, 725 n.9 (1980); Daugherty, supra.

. The DOL Field Operations Handbook “is an operations manual that provides Wage and Hour Division (WHD) investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance,” and “reflects policies established through changes in legislation, regulations, court decisions, and the decisions and opinions of the WHD Administrator.” Barrera v. MTC, Inc., 2011 WL 3273196, at *3 n.12 (W.D. Tex. 2011).

. Department of Labor opinion letters "’constitute a body of experienced and informed judgment’ and the court will give these materials ‘substantial weight.’” Barrera, supra, at n.13 (quoting Samson v. Apollo Resources, Inc., 242 F.3d 629, 639 (5th Cir. 2000).

. While not fully developed in its supporting briefs, Red Robin *182 inferred that as long as the expos regularly and frequently shared in Red Robin’s tip pool, they qualified as employees who “customarily and regularly” received tips under 29 U. S. C. § 203(m). (Docket entry no. 8 at p. 8). Under such circular logic, employers would have carte blanche authority to allow ineligible employees to participate in a tip pool and thereafter argue that those same employees “customarily and regularly receive tips” under Section 203(m). Federal courts have uniformly rejected such tautological reasoning, and we likewise repudiate that argument. See Kilgore, 160 F.3d at 301 (“Plaintiffs correctly identify some circularity here: whichever employees Outback decides to allocate the tip pool to could receive the requisite $30 a month in tips.... Plaintiffs’ argument fails because the circularity is limited by the subsection 203(t) requirement that an employee work ‘in an occupation in which he customarily and regularly receives...tips’”); Barrera, supra, at *9 (“However, the court agrees with plaintiff that [employer’s] tautological interpretation would grant employers fiat power to include anyone in the tip pool simply by doing so regularly, [citations omitted]. The court also agrees with plaintiff that [employer] ignores the necessary subsection 203(t) tip-pool limitation in the FLSA”); Roussell, 2008 WL 2714079 at *9 (“To the extent that defendant intends to argue that an employee may participate in a tip pool as long as they are ‘customarily and regularly’ tipped, i.e., with the ‘frequency’ defined in 29 C.F.R. § 531.57, the court agrees with plaintiffs that such an argument would lack any limiting principle and would appear inconsistent with congressional intent. Such a reading would allow an employer to include virtually any employee in a tip pool simply by allowing them to regularly share in tips, in apparent disregard of the fact that Congress and the Department of Labor have explicitly listed certain types of employees that may not participate in a tip pool”); Chan v. Triple 8 Palace, Inc., 2006 WL 851749, at *14 n.22 (S.D. N.Y. 2006) (“However, to the extent this reading would allow workers to become eligible for tip sharing simply by taking money from the tip pool, the restriction on tip sharing would become utterly meaningless. To avoid this circular reasoning and absurd result, the sixth circuit interpreted 29 U.S.C. § 203(m) as requiring that individuals sharing in a tip pool be ‘tipped employees’ as defined in § 203(t). That is, they must not only ‘customarily and regularly’ receive tips, but they must be ‘engaged in an occupation in which they customarily and regularly receive tips.’.... Though this court rejects a circular reading of § 203(m) under which anybody who takes from a tip pool thereby become eligible to do so, it need not determine at this stage whether to adopt the Kilgore court’s reading of the statute or some alternative interpretation”).